IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN T. BRUNETTE, JR., )<br>)<br>Plaintiff, )<br>) CIVIL ACTION NO.  6:22-cv-6376<br>v. )<br>)<br>BAUSCH HEALTH US, LLC. ) COMPLAINT<br>)<br>Defendants. ) JURY TRIAL DEMAND<br>) | |

## NATURE OF THE ACTION

This is an action brought under the Americans with Disabilities Act of 1990 ("ADA") and the Age Discrimination in Employment Act of 1967 ("ADEA"), and 29 U.S.C. § 621, et seq., to correct unlawful employment practices on the basis of disability and age and to provide appropriate relief to an employee who was adversely affected by such practices.  As alleged with greater particularity below, Plaintiff alleges that Defendant Bausch Health US, LLC (hereinafter also referred to as "Defendant" or "Employer") discriminated against Plaintiff John T. Brunette, Jr. (hereinafter referred to as "Plaintiff" or "John Brunette"), who is a qualified individual with a disability, and who was at all times relevant hereto over the age of 40, when it failed to engage in the required interactive process regarding his qualified disability, and when it failed to accommodate his reasonable requests for accommodation and when it subjected him to adverse actions in employment, as a direct and proximate result of the foregoing. The Defendant could have accommodated Plaintiff's multiple requests for a less stressful work environment and less overtime without undue burden such that he could have quite easily performed the essential

1

functions of his position had defendant accommodated him. Indeed, Plaintiff did perform the essential functions of his role even without those accommodations at all relevant times. On behalf of Plaintiff John Brunette, for his complaint against Defendants states as follows:

**Jurisdiction and Venue**

1. This action is authorized and instituted pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), and 29 U.S.C. § 621, et seq. as well as Title VII of the Civil Rights Act of 1964, and pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is also authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. This Court has original jurisdiction over this action, and each count, pursuant to 28 U.S.C. § 1331.

4. Venue of this action in the United States District Court for the Western District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to employment discrimination by Defendant in Rochester, NY, and in Monroe County, New York, within the Western District of New York, and a substantial part of the events giving rise to these claims, occurred in said locale.

5. All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed a charge of discrimination with the New York State Division of Human Rights, ("NYSDHR") Case Number 10214519, which was dual-filed with the United States Equal

Employment Opportunity Commission, ("EEOC") with Federal Charge Number as follows: 16GC200623, alleging age discrimination and disability discrimination.

6. Plaintiff files the instant Complaint within 90 days from his receipt of the "Right To Sue" Letter which issued and dated on June 7, 2022. (See Notice of Right To Sue, Attached hereto as Exhibit "**A**").

7. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York, Rochester Division.

8. The employment practices complained of herein were intentional and malicious in nature.

## **PARTIES**

9. Plaintiff, John T. Brunette, Jr., was born on March 12, 1960, and is a male resident of Webster, New York in Monroe County, and was at all relevant times hereto, an employee of Defendant at Defendants' facility located in Rochester, New York, during which he was over the age of 40 at all times relevant hereto.

10. Plaintiff suffers from ADA qualified disabilities about which, at relevant times hereto, Defendant was put on actual notice; the first of which is named "Multifactorial Highly Symptomatic Generalized Anxiety Disorder" and the second of which is "Depression", both of which affected his sleep, his mood and other major life activities such as, on occasion, the ability to work, particularly when symptomatic.

11. Defendant, Bausch Health US, LLC manufactures and markets a wide range of pharmaceutical products, over-the-counter products, and medical devices, including but not

3

limited to contact lenses, ophthalmic surgical equipment and aesthetic devices direct to more than 90 countries.

12.     Defendant conducted its business in Rochester, in the State of New York, where it employed Plaintiff and where it was operating within the jurisdiction of the Western District of New York, and where it has continuously had at least 15 employees and in which Defendant has continuously been an employer engaged in an industry affecting commerce.

## STATEMENT OF CLAIMS

13.     More than thirty days prior to the institution of this lawsuit, John Brunette filed a charge with the NYSDHR and EEOC alleging violations of the ADA and ADEA, as well as New York State law, against Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

14.     Defendant has engaged in unlawful employment practices in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") insofar as he was mistreated and subjected to adverse employment action and disparate, less favorable treatment as compared to his younger counterparts in the same or similar position, during his employment with Defendant, under circumstances which strongly and directly infer age discrimination in violation of the ADEA.

15.     More specifically, Brian Tortolon, who was a 25-year-old colleague of Plaintiff's with only about 3 years of on-the-job experience – was given the benefit of a Performance Improvement Plan ("PIP") by Defendant after having been accused of a similar act as Plaintiff was accused of when Defendant fired Plaintiff.

16.     Plaintiff was hired by Defendant as a Chemistry Technician III in 1997 in the Rochester, New York facility.

17. Plaintiff thrived while employed by Defendant prior to becoming disabled and when he was a younger man.

18. Plaintiff was generally successful at his employment and job performance throughout the many years of his career with Defendant.

19. Plaintiff last held the position of "Chemist II", where he was responsible for monitoring product quality and performance by performing chemical and physical tests.

20. As a result of a series of abrupt resignations, and retirements, due to poor working conditions, on information and belief, the team of 4 Chemists was, by mid-December of 2020, reduced to one Chemist – and that single Chemist was John Brunette – Plaintiff in the above action.

21. Meanwhile, due to the Covid-19 epidemic, Defendant had been deemed an "essential" business and had actually increased it manufacturing lines, thus causing even more stress on Plaintiff than he was under when he had the back up support of the other chemists.

22. As the lone Chemist in or about December of 2020, and with many more demands, deadlines and pressure on him, Plaintiff began to suffer sleeplessness, anxiety and weight loss of more than 10 pounds of body weight.

23. Defendant's demands on Plaintiff around this time frame caused Plaintiff to have very little "home-life", so that his "work-life balance" was out of whack and deleterious to his mental and physical health, causing him depression, anxiety, sleeplessness, and moodiness.

24. From March to December of 2020, Plaintiff had been overworked, often working 50 to 60- hour work weeks; yet after the loss of his Chemist-colleagues, he was pushed to the absolute limit of his tolerance for work-related stress.

25. Plaintiff, who had been diagnosed with prostate cancer, left work on December

18, 2020 to prepare for Prostate Cancer surgery scheduled for January 11, 2021.

26. While out of work, recovering from successful cancer surgery in February of 2021, Plaintiff, who had developed severe anxiety, fearing the toxic and unhealthy work environment he would presumably be returning to, requested of his Supervisor, Mr. Baccaro - both in writing and verbally over the phone, that his working conditions be more humane, and that he work fewer hours than the 45-50 hours to which he had become accustomed to working.

27. Plaintiff received no assurance or accommodation from Baccaro that Plaintiff's work week would consist of fewer hours and be less stressful. In fact, Supervisor Baccaro completely ignored Plaintiff's requests for accommodations, and did not even engage in the required interactive process to determine in good faith whether he could be accommodated with a less strenuous working environment.

28. As a result of Plaintiff's anxiety, his Physician extended his return-to-work date from February 25, 2021, to April 11, 2021.

29. Plaintiff's Primary Care Physician, Dr. Robert Cole diagnosed Plaintiff with "Multi-Factorial Highly Symptomatic Generalized Anxiety Disorder" about which Defendant was, on information and belief, notified.

30. On or about March 4, 2021, Plaintiff, who had been crushed by Defendant's refusal to even acknowledge his cries for help regarding his work conditions - was admitted to Rochester General Hospital's inpatient Psychiatric Unit for observation, medication and counseling.

31. Upon Plaintiff's discharge on March 15th, he was enrolled in the Strong Behavioral Health Adult Hospital via Zoom for approximately 6 hours of daily therapy.

32. Plaintiff had additional counseling from his discharge until August 17, 2021.

33. Meanwhile, Plaintiff successfully returned to work on a part-time basis on May 10, 2021.

34. Over the ensuring 5 weeks, Plaintiff returned to full-time status which contemplates a 40-hour work week.

35. On June 19, 2021, restrictions and limitations that had been put into place by Plaintiff's medical team were removed.

36. By the end of June, Plaintiff's Supervisor, Charles Henning, began to humiliate and harass Plaintiff with frivolous performance-related accusations and hyper-scrutiny the likes of which Plaintiff had not experienced prior to that, such that he inferred a connection between said mistreatment and his disabilities about which Defendant had knowledge.

37. Henning frivolously accused Plaintiff of working too slowly by saying things like "You are too slow!" and "I need a new Technician!"; in reality, Plaintiff had been picking up the slack caused by resignations, retirements and departures in the lab in which Plaintiff worked.

38. By July and August, Plaintiff could tell that Defendant was setting him up for termination because the critique of Plaintiff's performance was inconsistent, often false and harassing in nature. One day, for example, Plaintiff would be encouraged to take his time with testing, and that there was "no hurry" and the next, he would be brow-beaten for taking too long on the exact testing he had been admonished to take his time overseeing. Said harassment was pervasive, repeated, severe, and perpetrated for the apparent purpose of harassing and annoying Plaintiff, as well as to create a paper trail so that Defendant could later justify a termination.

39. Meanwhile, in the summer of 2021, Plaintiff learned that two of his colleagues – Christine Skolnick (over the age of 40 at all relevant times hereto) in July and Davia Oluic (55 years old) in August each had had stress-related breakdowns which caused them to break down

7

at work and to leave in tears and frustration.

40. On September 29, 2021, Defendant convened a meeting with Charles Henning and Assistant Supervisor Krieger at which Henning informed Plaintiff that his role as a Chromatographer was being taken away from him.

41. Plaintiff had been a Chemist for 39 years, 33 of which had been spent doing Chromatography.

42. Plaintiff's role as a Chromatographer started at Bausch Health in 1997.

43. Notably, Defendant replaced Plaintiff as the Chromatographer with a 28-year-old individual named Robert Kelly, II, who had no experience in commercial Chromatography.

44. In replacing Plaintiff with Mr. Kelly, Defendant overlooked the vast experience in commercial Chromatography of two of Plaintiff's older colleagues – Dava Oluic and Christine Skolnick, both of whom were closer in age to Plaintiff and both over the age of 50.

45. Plaintiff respectfully expressed his disagreement with what he considered to be a demotion.

46. In the month of September, 2021, Plaintiff once again requested of Henning and Krieger an accommodation in the form of a less stressful work environment with fewer hours (he had been routinely assigned to 45-50-hour work weeks plus the occasional weekend of work) but Defendant neither accommodated him nor even responded to his cry for help.

47. At the end of September 2021, Plaintiff performed a test which yielded a "passing result", yet Defendant frivolously undertook to investigate Plaintiff's testing procedures which had been accomplished correctly and even more efficiently than protocol contemplated.

48. Defendant gave Plaintiff no written or verbal warning concerning the alleged absence of protocol on his testing methodologies despite its practice of giving warnings to

younger Chemists.

49.     Instead, Defendant used its frivolous investigation results as the basis for terminating Plaintiff's employment, and replacing him with a much younger, and less experienced Chemist named Robert Kelly, II, who was 28 years old.

50.     On November 1, 2021, Director Baccaro summoned Plaintiff to meet with him in the Human Resources Department at which Defendant informed Plaintiff that he was terminated from employment.

51.     Defendant denied Plaintiff a requested Performance Improvement Plan or a warning, and went directly to termination; but notably, Defendant had given the benefit of a PIP to a poorly-performing and similarly situated employee/analyst named Brian Tortolon (28 years old) under similar circumstances despite that Tortolon had only been with Bausch Health for fewer than three (3) years.

52.     The disparate treatment as to Plaintiff compared to his younger counterpart, and Defendant's subsequent replacement of Plaintiff with an inexperienced 28-year-old named Robert Kelly, II strongly infers ageism in the Bausch Health workplace.

53.     Plaintiff was also the victim of disability discrimination in that Defendant began its pattern and practice of mistreating Plaintiff within days of his return to work from medical leave in May of 2021. Defendant, on information and belief knew Plaintiff had been hospitalized for a psychiatric condition related to anxiety and depression – a highly stigmatized form of disability in workplaces across America.

54.     In addition to discriminating against Plaintiff on the basis of his age and disability, Defendant also created a hostile work environment by manufacturing repeated false, and/or overblown performance-related allegations against Plaintiff within the workplace, and by

pitting other employees against Plaintiff, and by repeatedly and pervasively critiquing his work and by yelling at Plaintiff about his workmanship, or the speed of his work, and testing procedures he employed and by micromanaging his every move at his job as a Chemist in a manner that made it literally impossible to thrive.

55. The unlawful employment practices complained of above were intentional and malicious.

56. Anxiety, stress and emotional distress resulted directly and proximately from the foregoing discrimination and hostile work environment, which persisted from the date he returned to work in early 2021 until the date of Plaintiff's termination in November of 2021.

57. The unlawful employment practices complained of herein above were intentional, and malicious in nature for which Defendant should be forced to pay damages as well as punitive damages to Plaintiff in an amount to be determined for the emotional trauma suffered.

58. The unlawful employment practices complained of herein above were done with malice or with reckless indifference to the federally protected rights of Plaintiff, who was harassed, and discriminated against due to his age and disabilities.

59. The present Complaint shall have been filed in the Federal District Court, Western District of New York, within 90 days after receiving the two Right To Sue letters from the Equal Employment Opportunity Commission.

60. As a direct and proximate result of Defendant's discrimination, and harassment against Plaintiff, and notwithstanding Plaintiff's duty to attempt in good faith to mitigate his damages, Plaintiff has suffered damages in an amount to be determined at trial, including, but not limited to, significant lost wages and future wages, lost value of fringe benefits, and other forms of compensation, as well as the loss of a career with Defendant Bausch Health US, LLC in

amounts yet to be determined, but which exceed the minimum amount required to be in controversy within the present court.

**Count I. Age Discrimination in violation of ADEA.**

61.     Defendant discriminated against Plaintiff in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") when it subjected Plaintiff to adverse employment action because of his age, and when it treated Plaintiff less favorably than a 25-year-old colleague under almost identical circumstances, for which Plaintiff is entitled to monetary relief.

**Count II. Age Discrimination in violation of NYS Human Rights Law.**

62.     Defendant discriminated against Plaintiff in violation of N.Y. Exec. Law, art. 15 (Human Rights law) when it subjected Plaintiff to adverse employment action because of his age, and when it treated Plaintiff less favorably than a 25-year-old colleague under almost identical circumstances, for which Plaintiff is entitled to monetary relief.

**Count III. Disability Discrimination in Violation of ADA:**

63.     Defendant discriminated against Plaintiff, a disabled employee who suffered from a qualified disability when, because of Plaintiff's membership in said protected class, subjected him to adverse conditions in employment as set forth hereinabove, thus causing his joblessness, pecuniary harm, emotional distress damages as well as out of pocket costs.

64.     Defendant retaliated unlawfully against Plaintiff in violation of the Americans with Disabilities Act (ADA) when it failed to accommodate Plaintiff's requests for accommodations and when it fired Plaintiff, for which Plaintiff is entitled to monetary relief.

**Count IV. Disability Discrimination in Violation of N.Y. Exec. Law, art. 15 ("Human Rights Law"):**

65. Defendant discriminated against Plaintiff, a disabled employee who suffered from qualified disabilities when, because of Plaintiff's membership in said protected class, subjected him to adverse actions in employment, including failure to accommodate and termination, as set forth hereinabove, thus causing Plaintiff joblessness, pecuniary harm, emotional distress damages as well as out of pocket costs for which Plaintiff is entitled to monetary relief.

**Count V, VI and VII. Hostile Work Environment.**

66. Defendant created a hostile work environment in violation of N.Y. Exec. Law, art. 15 (Human Rights law), (Count V); the ADA (County VI) and the ADEA (Count VII) when it condoned pervasive and outrageous harassment in the workplace based on Plaintiff's age and disabilities for which Plaintiff is entitled to monetary relief.

## PRAYER FOR RELIEF

**Wherefore**, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from mistreating, or terminating qualified individuals from employment due to age and disabilities.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities to all employees, and which protect employees from unlawful age discrimination and disability discrimination.

C. Order Defendant Employer to make whole John Brunette by providing appropriate back pay, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

   D. Order Defendant Employer to make whole John Brunette by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, in amounts to be determined at trial.

   E. Order Defendant Employer to make whole John Brunette by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the harassment and discrimination complained of herein-above, which caused emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

   F. Order Defendant Employer to pay punitive damages so as to punish Defendant for its malicious and intentional acts as outlined in the foregoing Complaint.

   G. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

  The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

           Respectfully Submitted,

           S:// James D. Hartt
           **JAMES D. HARTT, ESQ.,**
           **Attorney For Plaintiff-Admitted to**
           **Practice in WDNY Federal Court**
           **6 N. Main Street, Suite 200-F**
           **Fairport, NY 14450**
           **Telephone: (585) 490-7100**
           **Fax: (716) 299-2006**

ORIGINAL of the foregoing was
filed this 5th Day of September with:
The Clerk of the Federal District Court
Western District New York District, Rochester Division