UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN T. BRUNETTE, JR.,

                                                  Plaintiff,                  Case # 22-CV-6376-FPG-CDH

v.                                                                                         DECISION AND ORDER

BAUSCH HEALTH US, LLC,

                                                  Defendant.
_____

**INTRODUCTION**

Plaintiff John T. Brunette, Jr., brings this action against Bausch Health US, LLC ("Defendant"), claiming age and disability discrimination under federal and New York state law. ECF No. 12. Defendant moves for summary judgment. ECF No. 39. Plaintiff opposes the motion. ECF No. 48. For the reasons that follow, Defendant's motion for summary judgment is GRANTED.

**LEGAL STANDARD**

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, parties "may not rely

1

on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

### I.     Relevant Facts

The following facts are taken from the parties' filings in support of or opposition to the motion for summary judgment and, unless otherwise stated, are not in dispute.

Defendant, a pharmaceuticals company, employed Plaintiff as a chemistry technician beginning in 1997. ECF No. 48-2 ¶ 4. In 2020, Plaintiff was a member of a five-person Manufacturing Quality Assurance Analytical team, working as the sole chemist on the team. ECF No. 39 at 4 ¶¶ 5-8, 5 ¶ 14.[1] Plaintiff alleges that his workload was demanding, requiring long hours and taxing his mental and physical health. ECF No. 48-2 ¶¶ 9-10.

In January 2021, Plaintiff began (with Defendant's permission) disability leave with benefits as a result of Plaintiff's surgery for prostate cancer. ECF No. 39 at 5 ¶¶ 16-17. In February 2021 and March 2021, Plaintiff requested that his leave be extended due to his ongoing health issues—Defendant granted both requests. *Id*. at 4 ¶¶ 21-23, 5 ¶ 28. In addition, Plaintiff requested that, upon his return to work, he be permitted a part-time work schedule for several weeks to accommodate his continued medical needs. ECF No. 39-11. Defendant agreed to the accommodation. ECF No. 39 at 8 ¶ 36. In a deposition, Defendant's attorney asked Plaintiff if he "ever request[ed] an accommodation for your disability that was not granted." ECF No. 39-4 at

---

[1] The Court notes that Defendant filed its notice of motion, memorandum in support, statement of undisputed material facts, and certification all as a single document. *See* ECF No. 39. This is contrary to the Local Rules, which require that a party moving for summary judgment annex "a *separate*" summary of material undisputed facts. Loc. R. Civ. P. 56(a)(1) (emphasis added). Because of this arrangement, the Court's citations to the memorandum in support of the motion for summary judgment and Defendant's statement of material facts refer to the pdf pagination of the combined document.

123 ¶¶ 24-25. Plaintiff responded "no," specifically stating that Defendant never denied accommodations relating to "a stressful work environment."[2] *Id*. at 124 ¶¶ 1-4.

In May 2021, Plaintiff returned to work; in June 2021, he returned to a full-time work schedule. *Id*. at 6 ¶ 38, 7 ¶ 39. In July 2021, Plaintiff allegedly failed to follow standard operating procedure during testing, which was discovered by peer review. *Id*. at 7 ¶¶ 42-43. Plaintiff does not deny failing to adhere to the testing protocol but alleges that the "procedures in question were outdated, inefficient, and can lead to problematic results," an issue he discussed with his superiors, and that "the spirit of the method was not compromised." ECF No. 49-1 ¶¶ 42-45. Regardless, it is undisputed that Plaintiff's supervisors admonished him to follow testing procedure and required that he attend a data integrity training session. ECF No. 39 at 10 ¶¶ 47-48.

Plaintiff also had difficulties in working at the same pace as his peers, causing the team's overall performance to suffer. *Id*. at 11 ¶¶ 49-50. Plaintiff alleges that his superiors "had little understanding of Plaintiff's role and duties" and thus "were not in a position to critique . . . the speed at which he worked," but does not deny that he was failing to make deadlines. *Id* at 12 ¶ 55; ECF No. 49-1 ¶¶ 53-55. Plaintiff further admits that the "biggest complaint" he received from his supervisor was that he relied on outdated testing procedures and did not adapt to the protocols Defendant required. ECF Nos. 39 at 11 ¶ 56; 49-1 ¶ 56. Plaintiff alleges that his supervisors' critiques of his performance were "often false and harassing," and done to "create a paper trail" so that Defendant could later justify a termination. ECF No. 48-2 ¶ 32. He further alleges that these "repeated false, and/or overblown performance-related allegations" created a hostile work environment between Plaintiff's return to work and his termination. *Id*. ¶¶ 48-49.

---

[2] In his answer, Plaintiff states that Defendant did not grant accommodations relating to "hiring qualified help." ECF No. 39-4 at 124 ¶¶ 1-4. This apparently alludes to a request for additional personnel that Plaintiff made prior to taking his leave in December 2020. *Id*. ¶¶ 5-6. Plaintiff does not refer to this alleged request in making his failure-to-accommodate claim, and so the Court will not address it.

3

In September 2021, Plaintiff was performing similar tests to those he had performed in July. ECF No. 39 at 11 ¶ 58. An employee reviewing Plaintiff's work discovered irregularities between the paperwork documenting the test and the equipment Plaintiff used, which made clear that Plaintiff had not used the proper testing method. *Id*. at 11 ¶¶ 61-62, 12 ¶ 64. Defendant alleges that Plaintiff submitted paperwork that "falsely stated" he had followed the proper procedure, in violation of Defendant's data integrity policy. *Id* at 12 ¶¶ 65-66. Plaintiff admits to having not followed the proper procedure but maintains that his inaccurate paperwork was due to a mistake and not having had the time to correct it, and that he nevertheless "followed the spirit of the testing methodology." ECF No. 49-1 ¶¶ 67-68.

Plaintiff's supervisors met with him to discuss the irregularities, during which interview Plaintiff admitted to failing to adhere to protocol. ECF No. 39 at 12 ¶¶ 69-70. In November 2021, Defendant terminated Plaintiff's employment. *Id*. at 13 ¶ 76. Plaintiff alleges that he was replaced by a "much younger man." ECF No. 48-2 ¶ 3. Defendant disputes this: one of Plaintiff's supervisors, whose deposition Defendant provides, states that the younger employee was added to the team prior to Plaintiff's termination and that Plaintiff's duties did not change as a result. ECF No. 39-2 at 45.

Underperforming employees of Defendant are sometimes permitted to enter a Performance Improvement Plan ("PIP") designed to bring them into compliance with company standards. *Id*. at 13 ¶ 78. Plaintiff alleges that a 25-year-old colleague was permitted a PIP despite "having been accused of a similar act as Plaintiff." ECF No. 48-2 ¶¶ 1-2. A deposition Plaintiff filed in opposition to the motion for summary judgment reflects that this younger employee had failed to meet expectations for the quality and quantity of work relative to his peers. ECF No. 51 at 39. Defendant alleges—and Plaintiff does not dispute—that PIP is not available to employees who

4

violate the data integrity policy, and no employee at the Rochester facility has been placed on a PIP after such a violation.  ECF No. 39 at 15 ¶¶ 79-80.  In a deposition provided by Defendant, one of Plaintiff's supervisors testified that he had previously terminated an employee who was "in his 20s" for "a data integrity violation/fraud."  ECF No. 39-2 at 73 ¶¶ 7-20.

## II. Procedural History

In September 2022, Plaintiff filed this action.  ECF No. 1.  In his second amended complaint, Plaintiff makes the following claims: (1) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and the New York State Human Rights Law ("NYSHRL"); (2) discriminatory termination and failure to accommodate in violation of the Americans with Disabilities Act ("ADA") and NYSHRL; and (3) hostile work environment in violation of the ADEA, NYSHRL, and ADA.  ECF No. 12 ¶¶ 61-68.

In February 2025, Defendant moved for summary judgment on all claims, arguing that (1) the age discrimination claims fail because Defendant was disciplined and fired for non-pretextual reasons and was not replaced with a younger employee; (2) the disability discrimination claims fail because Defendant had a non-discriminatory reason to terminate Plaintiff's employment and accommodated Plaintiff's disability as it was best able; and (3) Plaintiff failed to produce evidence of a hostile work environment.  ECF No. 39.  Plaintiff opposes, arguing that the reasons for his termination were pretextual; Defendant failed to accommodate his disability; and the "micromanagement" and "hyper-scrutiny" placed on Plaintiff constituted a hostile work environment.  ECF No. 48.  Defendant replies that Plaintiff's claims are contrary to the record, which shows that Plaintiff was fired for having violated the data integrity policy.  ECF No. 56.

**DISCUSSION**

**I.     Age Discrimination**

Under the ADEA, it is "unlawful for an employer to take adverse action against an employee 'because of such individual's age.'" *Gross v. FBL Financial Servs.,* 557 U.S. 167, 170 (2009) (quoting 29 U.S.C. § 623(a)). The plaintiff bears the initial *de minimis* burden of establishing a *prima facie* case of age discrimination. *See Abraham v. Board of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 72 (2d Cir. 2004). "[A]ge discrimination suits brought under the [NYSHRL] are subject to the same analysis as claims brought under the ADEA." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

To establish a *prima facie* ADEA claim, a plaintiff must show that (1) he is a member of the protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the action give rise to an inference of age discrimination. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). To establish the fourth element, the plaintiff's proffered admissible evidence must show "circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive" to discriminate against an individual because of his or her age. *Chambers v. TRM Copy Centers*, 43 F.3d 29, 38 (2d Cir. 1994); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) ("In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision."). "Circumstances contributing to an inference of age-based employment discrimination may include: invidious comments about people in the protected age class; more favorable treatment of younger employees; criticism of an employee's work performance in age-related degrading terms; a sequence of events leading to an employee's termination; or the timing of the termination." *Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*, 703 F.

Supp. 2d 230, 245 (E.D.N.Y. 2010).  Even if a particularly hostile and contentious relationship exists between employer and employee, "absent any claim of age-related animus," a dispute "is not the province of the ADEA."  *Szarzynski v. Roche Labs., Inc.*, No. 07-CV-6008, 2010 WL 811445, at *9 (W.D.N.Y. Mar. 1, 2010).

If the plaintiff overcomes this burden, the defendant employer must then articulate a legitimate, nondiscriminatory reason for the challenged adverse action.  *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 221 (2d Cir. 2004).  If the employer does so, the plaintiff can no longer rely on his *prima facie* case, and must then prove by a preponderance of the evidence that age was the "but-for" cause of the challenged employer decision.  *Gross*, 557 U.S. at 176.  Even a plaintiff who can demonstrate that age was at least a "contributing or motivating factor" in the challenged action has not satisfied his burden to prove "but-for" causation.  *Gorzynski*, 596 F.3d at 106.  Accordingly, a plaintiff who cannot demonstrate that age was even a contributing factor in his employer's actions, and who instead advances allegations that are "conclusory and unsupported by evidence of any weight," will inevitably lose on summary judgment.  *See Crowe v. Leroy Cent. School Dist.*, 949 F. Supp. 2d 435, 445 (W.D.N.Y. 2013) (quoting *Smith v. American Exp. Co.*, 853 F.2d 151, 155 (2d Cir. 1988)).

First, the Court addresses whether there is sufficient evidence that Defendant's treatment of Plaintiff and its termination of his employment "occurred under circumstances giving rise to an inference of discrimination" for the purposes of establishing a *prima facie* case of age discrimination.[3]  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012). Consulting the potential circumstances that may lead to an inference of age-based discrimination, there is no evidence in the record that Plaintiff was subject to any comments or criticism relating

---

[3] Because the first three elements of a *prima facie* case of age discrimination are not in dispute, the Court addresses only the fourth element: that circumstances gave rise to an inference of discrimination.

7

to his age, nor that the events leading up to or timing of his termination suggest it was due to his age. *Miller*, 703 F. Supp. 2d at 245. Plaintiff claims that he was treated less favorably because a younger employee was given a PIP rather than being terminated, but the record shows that this younger employee did not—unlike Plaintiff—violate the data integrity policy and was instead subjected to PIP for mere performance issues. *See* ECF No. 39 at 15 ¶¶ 79-80. Plaintiff does not dispute this. ECF No. 49-1 ¶¶ 79-80. Therefore, this employee was not similarly situated to Plaintiff. *See Miller*, 703 F. Supp. 2d at 245.

Next, Plaintiff points to his replacement by a younger employee as an indicator of discrimination. ECF No. 48-2 ¶ 3. It is true that the "Second Circuit has continuously held that an inference of discrimination arises, for purposes of ADEA defendants' summary judgment motions, when an older qualified employee is replaced by someone younger." *McGuire-Welch v. House of the Good Shepherd*, 219 F. Supp. 3d 330, 340 (N.D.N.Y. 2016), *aff'd* 720 F. App'x 58 (2d Cir. 2018) (collecting cases). The parties dispute whether this younger employee was truly a replacement for Plaintiff—the record suggests that the new employee was hired while Plaintiff was still employed, and Defendant alleges that the hire did not change Plaintiff's duties. ECF No. 39-2 at 45. Regardless, considering the facts in the light most favorable to Plaintiff, and the *de minimis* burden placed on Plaintiff to establish his *prima facie* case, the Court may assume that the hiring of a younger replacement satisfies Plaintiff's burden at this stage of the analysis.

However, even if the Court concluded that Plaintiff carried his *prima facie* burden, Plaintiff's claim does not survive the next hurdle. Under *McDonnell Douglas*, the burden shifts to Defendant to provide a legitimate, nondiscriminatory reason for terminating Plaintiff. *Patterson*, 375 F.3d at 221. Defendant has done so here: Plaintiff's violation of the data integrity policy, which Defendant cites as the sole reason for Plaintiff's termination. As with Plaintiff's *prima facie*

case, Defendant's burden here "is one of production, not persuasion, and the Court's analysis at this stage can involve no credibility assessment of the evidence." *Cretella v. Liriano*, 633 F. Supp. 2d 54, 72 (S.D.N.Y. 2009) (citation omitted). Given the record evidence, the Court is satisfied that this alleged violation is sufficient to carry Defendant's burden under *McDonnell Douglas*. *See McGuire-Welch*, 219 F. Supp. 3d at 341 ("[A]t this point, defendant need only present a clear explanation for plaintiff's termination, not prove that the proffered explanation was the actual reason for its decision.").

Accordingly, the burden shifts again to Plaintiff to prove by a preponderance of the evidence that age was the "but-for" cause of his termination. *Gross*, 557 U.S. at 176. "In this respect, it is important to consider whether the explanations that [defendant] gave for [plaintiff's] firing were pretextual." *Gorzynski*, 596 F.3d at 107. A court determining whether a cause for termination was pretextual "normally focuses upon factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules, whether the rule applied to the plaintiff has been applied uniformly, and whether the putative non-discriminatory purpose was stated only after the allegation of discrimination." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 171 (2d Cir. 1993).

Here, Plaintiff argues that the reasons for his termination were pretextual. Plaintiff does not dispute that he failed to adhere to protocol but insists that he was otherwise a model employee and that his breach of procedure—which he attributes to error, rather than deliberate fraud—was not sufficiently serious to warrant his dismissal. ECF No. 48 at 14-15. But at this stage, a "factfinder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable," but must rather "determin[e] whether the articulated purpose is the actual purpose for the challenged employment-related action." *DeMarco*, 4 F.3d at 170-71; *McGuire-Welch*, 219

9

F. Supp. 3d at 343 ("The relevant inquiry is not whether the performance-based justification for plaintiff's termination articulated by defendant is accurate or fair, but whether plaintiff can show any evidence that it was not the actual justification."). Plaintiff may claim that Defendant acted too hastily in firing him for an alleged error, but he offers no evidence that his termination was but-for caused by a discriminatory intent. *See Kalra v. HSBC Bank USA, N.A.*, 567 F. Supp. 2d 385, 397 (E.D.N.Y. 2008), *aff'd*, 360 F. App'x 214 (2d Cir. 2010) ("[I]t is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination.").

Plaintiff's arguments that his treatment nevertheless differed from that of younger employees are not persuasive. Plaintiff claims that Defendant deviated from its usual policies by not offering Plaintiff a PIP rather than termination. But Defendant states that that it *never* offered PIP to employees who were found to have violated the data integrity policy—Plaintiff does not dispute this, and has offered no evidence of younger employees who were treated differently after having committed similar violations. ECF No. 39 at 15 ¶¶ 79-80; *see Eng v. Beth Israel Med. Ctr.*, 93-CV-3605, 1995 WL 469704, *4 (S.D.N.Y. 1995) (granting summary judgment where there was "no evidence that [plaintiff] was treated in a manner procedurally inferior to other [employees], nor evidence suggesting the reason for not suspending him was age discrimination"). In fact, one of Plaintiff's supervisors testified that an employee who was "in his 20s" had committed a similar data integrity violation and was also terminated. ECF No. 39-2 at 73 ¶¶ 7-20. As for the other evidence Plaintiff cites to prove pretext, his alleged replacement by a younger employee, "though enough to establish the inference of discrimination prong of plaintiff's prima

10

facie case, cannot standing alone establish pretext," *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 574 (S.D.N.Y. 2010), nor can "[d]emonstration of past positive performance," *Iverson v. Verizon Comm.*, No. 08-CV-8873, 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009).

Plaintiff may claim that his termination was unfair or due to ageism, but his burden at this stage requires more than speculation as to Defendant's motives. *See Rupert v. City of Rochester, Dep't of Env't Servs.*, 701 F. Supp. 2d 430, 442 (W.D.N.Y. 2010) ("Speculation and conclusory allegations do not demonstrate pretext."). Plaintiff has not met that burden. Accordingly, Defendant's motion for summary judgment is GRANTED as to Plaintiff's age-discrimination claims.

## II.     Disability Discrimination

"Title I of the ADA prohibits employers from discriminating again[st] any 'qualified individual with a disability because of the disability of such individual' in regard to any aspect of employment." *Dansler-Hill v. Rochester Inst. of Tech.*, 764 F. Supp. 2d 577, 582 (W.D.N.Y. 2011) (quoting 42 U.S.C. § 12112(a)). To establish a prima facie case for disability discrimination under the ADA, a plaintiff must show that (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004). The same requirements apply to Plaintiff's NYSHRL claim. *See Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015); *see also Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the New York State Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims.").

11

Thereafter, under *McDonnell Douglas*, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *See Benson v. Family Dollar Operations, Inc.*, 755 F. App'x 52, 56 (2d Cir. 2018) (summary order). If the defendant satisfies this burden, the plaintiff must present evidence that the articulated reason was a pretext for discrimination. *Borders v. Goodyear Dunlop, N.A.*, No. 17-CV-1159, 2020 WL 210056, at *7 (W.D.N.Y. Jan. 14, 2020). "A plaintiff must produce not just some evidence, but sufficient evidence that shows that the defendant's legitimate, nondiscriminatory reason proffered was false and instead, discrimination was the real reason for the materially adverse action." *Talbott-Serrano v. Iona Coll.*, No. 21-CV-1055, 2022 WL 3718346, at *10 (S.D.N.Y. Aug. 29, 2022). "[A] reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and that discrimination* was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original) (internal quotation marks omitted).

In addition, employers covered under the ADA have an affirmative duty to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018). "To maintain a prima facie claim under the ADA and the NYSHRL for failure to accommodate, an employee must show that: (1) [plaintiff] is a person with a disability under the meaning of the ADA or the NYSHRL; (2) an employer covered by the statute had notice of [plaintiff's] disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Id.* at 368-69 (internal brackets omitted). Claims for failure to

12

accommodate are also governed by the *McDonnell Douglas* burden-shifting analysis. *Borders*, 2020 WL 210056, at *7.

### a. Discriminatory Termination

Defendant concedes the first three elements of establishing a *prima facie* case under the ADA, but argues that Plaintiff fails to show that his termination was because of his disability. ECF No. 39 at 36. Plaintiff responds that the "inference of [disability] discrimination is clear" because he was fired within months of having returned to work after his medical leave of absence with "[n]o PIP" and "[n]o verbal warning," unlike the treatment of another employee who was given a PIP. ECF No. 48 at 19. The Court has doubts that these instances are enough for a reasonable jury to infer a *prima facie* case of disability discrimination. First, the record shows that Plaintiff had, in fact, been admonished by his supervisors in the past for violations of testing procedure and had been compelled to undergo retraining with regards to the data integrity policy. ECF No. 39 at 10 ¶¶ 47-48. Indeed, Plaintiff admits that the "biggest complaint" he received from his supervisor was his failure to adhere to procedure—this does not comport with Plaintiff's claim of having been terminated without warning. *Id*. at 11 ¶ 56; 49-1 ¶ 56. Second, as the Court has already noted, Plaintiff refers to a single employee that received a PIP rather than being terminated. But that employee had not violated the data integrity policy, and Plaintiff does not dispute that such violations do not typically warrant a PIP. ECF No. 39 at 15 ¶¶ 79-80. Given the stark difference in these circumstances, the Court is not persuaded that the treatment of this other employee is sufficient to infer disability discrimination.

Regardless, even if the Court assumed that Plaintiff has articulated a *prima facie* case, it is well-established that "workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability." *McElwee v. Cty.*

13

*of Orange*, 700 F.3d 635, 641 (2d Cir. 2012); *see also Johnson v. L'Oréal USA*, No. 18-CV-9786, 2021 WL 4482167, at *15 (S.D.N.Y. Sept. 30, 2021) (granting summary judgment because even if a disability contributed to an employee's misconduct, "that does not shield her from termination" under the ADA and NYSHRL).  Here, Defendant claims that Plaintiff's misconduct relating to the data integrity policy was the reason for his termination.  Accordingly, the burden shifts back to Plaintiff to prove that Defendant's stated reason for his termination was pretextual.  *Borders*, 2020 WL 210056, at *7.

As with his age discrimination claims above, Plaintiff fails to meet this burden.  Plaintiff again cites to Defendant not having offered PIP as evidence of pretext, but Defendant has provided evidence that PIP was not typically offered to employees who committed data integrity violations, *see* ECF No. 39 at 15 ¶¶ 79-80, and that a younger employee who made a similar violation had also been terminated, *see* ECF No. 39-2 at 73 ¶¶ 7-20.  And even if Defendant had been incorrect in concluding that Plaintiff violated policy or overly harsh in deciding to terminate him, it does not necessarily follow that the stated reason for his firing was pretextual.  *Kalra*, 567 F. Supp. 2d at 397; *see also Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 509 (S.D.N.Y. 2010) ("[W]hether the complaints against Plaintiff were truthful, and whether, if true, they justify termination, are immaterial disputes.").  The record provides ample evidence that Plaintiff struggled to adhere to protocol or productivity standards since his return to work, and none that suggests his termination was motivated by his disability.  Accordingly, the motion for summary judgment is GRANTED as to Plaintiff's discriminatory-termination claims.

      b. **Failure to Accommodate**

Defendant does not dispute that Plaintiff was disabled, Defendant was on notice about the disability, or that he could have performed the essential functions of his work.  ECF No. 39 at 36.

Instead, Defendant argues that it granted all of Plaintiff's requested accommodations and thus Plaintiff fails to establish a *prima facie* case of failure-to-accommodate. *Id*. The Court agrees.

It is undisputed that Plaintiff made several requests for additional leave time and reduced hours relating to his physical and mental conditions; it is further undisputed that Defendant granted all of these requests. ECF No. 39 at 8 ¶ 36. Plaintiff nevertheless argues that he requested, among other accommodations,[4] a "less stressful environment" in which to work, which Defendant failed to provide given the "increase in micromanagement" and "refusal to give [Plaintiff] a PIP." ECF No. 48 at 18.

These arguments are not persuasive. First, Plaintiff's claim that his requests for less stressful conditions are contradicted by his deposition testimony, where he specifically states that Defendant granted his accommodation requests relating to "a stressful work environment." ECF No. 39-4 at 124 ¶¶ 1-4. Second, with regards to PIP, the Court has already noted that the record reflects—and Plaintiff does not dispute—that PIP was not offered in cases where, as here, an employee violated the data integrity policy. *See* ECF No. 39 at 15 ¶¶ 79-80. Plaintiff's circumstances were therefore materially different for those of other employees who were granted PIP to correct mere underperformance. *See Garvey v. Sullivan*, 773 F. App'x 634, 637 (2d Cir. 2019) (summary order) (rejecting claim that accommodation was consistent with his employer's "past practices," where other employees' situations were "not comparable" to the plaintiff's). Third, Plaintiff's suggestion that his employer should have granted him a PIP is not a reasonable accommodation under the ADA. This "accommodation" is essentially a request "to receive a penalty for [misconduct] other than his termination." *Fahey v. City of New York*, No. 10-CV-4609,

---

[4] In his amended complaint, Plaintiff alleges that Defendant failed to accommodate his request for fewer work hours. ECF No. 12 ¶ 66. He does not re-raise this allegation in his response to the motion for summary judgment and, regardless, the record reflects that Plaintiff's requests for a reduced work schedule were granted. *See* ECF No. 39 at 8 ¶ 36.

15

2012 WL 413990, at *9 (E.D.N.Y. Feb. 7, 2012). "Such a request is unreasonable as a matter of law, because [employee misconduct] . . . always constitute[s] legitimate and nondiscriminatory reasons for terminating employment." *Canales-Jacobs v. N.Y. State Office of Ct. Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009). Finally, "it is well established that an employer need only provide an accommodation that is sufficient to meet the job-related needs of the individual being accommodated and is not require[d] to meet the personal preferences of disabled employees." *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016) (internal quotation marks omitted). Plaintiff does not elaborate on what accommodations he expected, but his claim that his supervisors' tendency to "micromanage" constituted a failure to accommodate speaks more to his personal preferences than the needs of his disability. Such preferences "cannot support a claim of unlawful discrimination." *Id*. at 73.

Given the above points, the Plaintiff has failed to present a *prima facie* case for failure to accommodate. Accordingly, the Court GRANTS summary judgment as to these claims.

### III. Hostile Work Environment

#### a. Federal Claims

To prevail on a hostile-work-environment claim, the plaintiff "must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (internal quotation marks omitted). The employee may demonstrate this specific basis "by showing that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quoting *Kariban v. Columbia Univ.,* 14 F.3d 773, 780 (2d Cir.

1994)). "To be deemed pervasive, discriminatory incidents must be more than episodic; they must be sufficiently continuous and concerted." *Talbott-Serrano*, 2022 WL 3718346, at *15. "Furthermore, a plaintiff must demonstrate that the conduct occurred 'because of' the plaintiff's protected status and 'that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Id*. at *15 (quoting *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 102 (2d Cir. 2020). "Both ADEA and ADA hostile work environment claims are governed by this framework." *Verne v. New York City Dep't of Educ.*, 697 F. Supp. 3d 30, 53 (S.D.N.Y. 2023).

Plaintiff argues that his workplace was "permeated with micromanagement, harassment, hyper-scrutiny and unfair adverse employment action." ECF No. 48 at 20. Defendant argues that Plaintiff has failed to produce any evidence of a hostile work environment, save for his supervisor's criticism of Plaintiff's work. ECF No. 39 at 38. The Court agrees with Defendant. Perhaps Plaintiff's supervisors did indeed micromanage him or place him under excessive pressure. But a "being reprimanded at work . . . generally does not, alone, suffice to create a hostile work environment," *Ferrando-Dehtiar v. Anesthesia Grp. of Albany, P.C.*, 727 F. Supp. 3d 165, 187 (N.D.N.Y. 2024), nor does a "fraught relationship[] with [a] supervisor[]," *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019) (summary order). Even if the criticism of Plaintiff was unduly harsh or undeserved, it does not follow that his treatment was sufficiently serious or pervasive. *See Ramirez v. Temin & Co.*, No. 20-CV-6258, 2021 WL 4392303, at *8 (S.D.N.Y. 2021) ("[E]xcessive criticism and rudeness do not constitute a hostile work environment."); *Missick v. City of N.Y.*, 707 F. Supp. 2d 336, 355 (E.D.N.Y. 2010) ("[A] pattern of simple discourtesy, without more, has consistently been held insufficient to trigger hostile work environment protections under state or federal law").

Moreover, even if Plaintiff's treatment *was* sufficiently serious, Plaintiff has not provided evidence that his treatment was attributable to his age or disability. *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("[M]any bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."). There is no evidence in the record of Plaintiff having suffered "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 262 (2d Cir. 2023) (internal quotation marks omitted). Without this, his claims cannot survive summary judgment. Accordingly, the motion is GRANTED as to Plaintiff's federal hostile-work-environment claims.

### b. State Claim[5]

Having dismissed the only remaining federal claim, and thus the basis for federal question subject matter jurisdiction, the Court turns to whether it should exercise supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(a). The Second Circuit has been clear, as a general proposition, that "if [all] federal claims are dismissed *before trial* . . ., the state claims should be dismissed as well." *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (emphasis added); *see Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("In the usual case in which all federal-law claims are eliminated before trial in federal court, the balance of judicial economy, convenience, fairness, and comity, to be considered under the pendent

---

[5] Previously, hostile-work-environment claims under the NYSHRL "were governed by the same standard" as federal claims. *Ferrando-Dehtiar*, 727 F. Supp. 3d at 189. However, "amendments to the NYSHRL came into effect that eliminated the 'severe and pervasive' standard" for hostile-work-environment claims. *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-2512, 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022) (citing N.Y. Exec. Law § 300). Because the Court declines to extend jurisdiction to Plaintiff's NYSHRL hostile-work-environment claims, however, it is not necessary to analyze Plaintiff's claims under this different standard.

jurisdiction doctrine, will point toward the federal court declining to exercise jurisdiction over the remaining state-law claims."). "Thus, district courts routinely decline to exercise jurisdiction over related state claims once summary judgment is granted for the defendant on all of the federal claims." *Garcia v. Marc Tetro, Inc.*, No. 18-CV-10391, 2020 WL 996481, at *3 (S.D.N.Y. Mar. 2, 2020).

Having considered the factors, the Court discerns no exceptional circumstances that would distinguish this case from the norm and require the surviving state-law claim remain in federal court. Accordingly, the Court intends to decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL hostile-work-environment claim and dismiss it without prejudice to refiling in state court. Before doing so, the Court will give the parties an opportunity to be heard on the matter. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("Hearing from the parties either in person or on the papers is typically an essential component of the inquiry into whether to decline to exercise supplemental jurisdiction."). The parties may file supplemental letters addressing whether the Court should exercise supplemental jurisdiction over Plaintiff's NYSHRL hostile-work-environment claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 39) is GRANTED as to Plaintiff's federal- and state-law claims for age and disability discrimination and his federal-law hostile-work-environment claims, which are DISMISSED WITH PREJUDICE. On or before **August 11, 2025**, the parties may file supplemental letters addressing whether the Court should exercise supplemental jurisdiction over Plaintiff's NYSHRL hostile-work-environment claim.

IT IS SO ORDERED.

Dated: August 6, 2025
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York